WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ 85711
(520) 745-7810

Barry Kirschner/SBN 005592/PAN 31284
bkirschner@waterfallattorneys.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| LUIS MONROY,<br><br>Plaintiff,<br><br>vs.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendant. | D.C. No.<br><br>**COMPLAINT** |

Plaintiff Luis Monroy ("Monroy") alleges:

1. This dispute is within the jurisdiction of the United States District Court for the District of Arizona. 29 U.S.C. §1132 (a)(1)(B) and (a)(3). Venue is proper.

2. Monroy was a long term employee of the TCAG, Inc. (TCAG) and a participant in the group insurance contract sponsored by TCAG, on information and belief formally titled Group Short Term Disability Plan for Employees of TCAG, Inc. (Plan).

3. Defendant The Lincoln National Insurance Company ("Lincoln") is an insurer which makes itself available to insure, and to administer Policies of insurance and claims for Plans, including within Arizona and plans governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1101 et seq. The same Lincoln is

the insurer of the Group Long Term Disability Plan for Employees of TCAG, Inc. (LTD Plan)

4. The relevant insurance group disability protection in which Monroy is a participant is part of a contract between the Plan and Lincoln to provide benefits to employees such as Monroy. The Plan is within the scope of ERISA.

5. On information and belief Monroy is able to receive full relevant ERISA relief available through this civil action against Defendant Lincoln, without naming the Plan as a Defendant.

6. The purpose of Congress in enacting the Employee Retirement Income Security Act (ERISA) is described in 29 U.S.C. §1001(b):

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.
> 29 U.S.C. §1001(b).

7. All procedures which must be exhausted prior to bringing this civil action have been exhausted. This claim is ripe for decision by the United States District Court.

8. Lincoln owes a fiduciary duty to its Plan participants including Monroy.

9. Lincoln has acted with bias in not providing a full and fair review of Monroy's claim for short term disability benefits, and related appeals. Lincoln has a structural conflicted interest because if it uses its fiduciary power to terminate payment of the benefits Lincoln is rewarded by keeping the money that would be due to its beneficiary.

10. Monroy has medical problems including severe low back pains that have worsened for most of the last decade.

11. Monroy underwent right and left laminectomies to attempt to gain relief on June 22, 2015 and August 25, 2015.

12. Monroy underwent a L4-L5 lumbar fusion on or about December 2015 to attempt to relieve his severe low back pains.

13. Monroy underwent bilateral L2-L4 diagnostic medial branch blocks on December 2, 2016.

14. Medical ailments persist. Monroy has obtained medical work-up including from a team of doctors at the Mayo Clinic in Scottsdale, Arizona, and neurosurgeon Eric Sipos, Endocrinologist Michael Maricic, and Tucson Pain management specialist Eric Cornidez in Tucson.

15. As of January 2017 Monroy's prescribed medications included Naproxen 250 mg, Acetaminophen-Oxycodone 325 mg-5 mg, Cyclobenzaprine 5 mg, Diazepam 2 mg, Lisinopril 5 mg, Gabapentin 300 mg, Piroxicam 20 mg.

16. Monroy's claim for benefits was approved and benefits paid by Lincoln from February 15, 2017 until March 1, 2017. It was terminated effective March 2, 2017. The initial approval was based on diagnoses and/or determinations of lumbosacral spondylitis with radiculopathy, chronic pain, and chronic use of opioids.

17. Benefits ceased effective March 2, 2017 when Lincoln, without hiring a doctor for an independent medical exam, or even a medical doctor to review the file, terminated the claim based on the advice of a nurse consultant who found no abnormal objective findings or evidence of functional deficits.

18. The conclusions and assumptions of Lincoln were wrong. For instance, the February 16, 2017 physical examination of pain management specialist Dr., Eric Cornidez revealed facet loading positive, tender over SI (Sacro-iliac) regions, and walks with slightly antalgic gait. There is ample evidence of multiple surgeries on Monroy and his low back, none of which had provided long term relief.

19. The February 27, 2017 assessment following further physical examination by treating pain management physicians included references to imaging history and

intervertebral disc degeneration, lumbar disc degeneration, post-laminectomy syndrome, myalgia, and chronic pain syndrome.

20. By a letter dated April 25, 2017 Lincoln denied STD benefits beyond March 1, 2017. Prior to being represented by counsel, Monroy timely appealed the termination of his STD benefits.

21. The Monroy appeal included information documenting the length, longevity, and severity of his low back ailment.

22. Lincoln denied Monroy's appeal by letter dated June 20, 2017. Lincoln's letter accepted the diagnosis of lumbosacral spondylosis with radiculopathy, chronic pain, and chronic continual use of opioids. It also stated: "While we acknowledge your reports of ongoing low back pain and understand that you would need to continue your pain medication and treatments; these treatments can be continued on an outpatient basis and scheduled around a fulltime work schedule, thereby avoiding missed time from work."

23. Monroy again without counsel timely appealed, to Lincoln on December 18, 2017. Monroy included supporting documentation from doctors Maricic, Pereira, Sipos, Cornidez, and Bejarano. This appeal was denied by a March 19, 2018 letter from Lincoln.

24. Through all appeals, Lincoln never obtained a functional capacity evaluation ("FCE"), or paid for an independent medical examination ("IME").

**MONROY AND HIS OCCUPATION**

25. Monroy is an Automobile-Repair Service Estimator (Estimator) and has been since April, 1995 for Jim Click Auto Group.

26. Monroy has long worked in an occupation which requires occasional stooping, kneeling, crouching, frequent reaching, and handling.

27. Monroy's regular occupation, and the ability to perform all responsibilities well, is critical to efficient administration of quality customer service for his employer.

28. Monroy's substantial and material duties include a combination of activities which are inconsistent with someone afflicted with the conditions and low back pain he has suffered prior to making his claim for Short Term Disability (STD).

29. After becoming aware of Monroy's symptoms and medical limitations, his employer advised Lincoln of the physical requirements of the Estimator occupation:

> 10. Works in an out-of-doors environment during daytime and night time hours and in a variety of weather conditions and temperatures, environment is generally dusty and filled with vehicle exhaust.
> 11. Works with more than one person and/or task simultaneously, maintaining a cordial and friendly manner at all times.
> 12. Extensive (up to 8 consecutive hours) standing and walking (up to _5_ miles daily) on cement, unusual parking lot surfaces, tile, lino and other interior and exterior flooring surfaces.
> 13. *Repeated, regular and extended sliding, twisting, bending, pulling, pushing, stooping, stretching and reaching.*
> 14. Repeated and regular getting in and out of different sized vehicles.
> 15. Repeated lifting of vehicle hoods and trunks (up to 40 pounds leveraged).
> …
> 17. All physical requirements detailed on attached chart. (Italics emphasis added)
>
> *See* MonroyCF-00188 (hereinafter "CF #___").

## LINCOLN'S MEDICAL REVIEW

30. Medical reviewer Thomas Luna was hired by Lincoln to review the December 2017 appeal of Monroy. He issued his January 18, 2018 report under the letterhead of Professional Disability Associates (PDA) to Lincoln. On information and belief PDA is a for profit company providing medical opinions or peer reviews to disability insurance companies.

31. The Luna report referenced a January 12, 2018 telephone call with Dr. Valerie Wohl, Monroy's primary care provider (PCP). Wohl stated an unambiguous opinion that Monroy was unable to work. Luna described Dr. Wohl's statement in part:

> You told me that at least two or three days a week Mr Monroy has so much pain that his mobility is severely affected. At such times he is unable to walk or get out of bed. It is quite unpredictable when these days will occur. On other days, he continues to have significant pain but he has full mobility and could possibly work. You believe that the unpredictability of Mr. Monroy's immobility renders him unable to work.

The opinion by Dr. Wohl that Monroy could not return to work was consistent with her opinions expressed in May 2017, and January 2017.

32. Luna's January 18 report admits that the patient suffers back pain which is axial or radicular and states:

> Mr. Monroy appears to have significant pain on a daily basis with periodic exacerbations and mild to moderate control with medications, acupuncture and exercise. Apart from his pain, he does not appear to have any physical functional limitations except when he has associated back spasm. Back spasms and associated reduced spinal range of motion are credibly associated with spondylosis/axial back pain. The frequency of his back spasms is not described in the documents available for my review but they were present in only a small minority of the clinical encounters provided to me. Clinical notes were consistent in documenting normal strength and sensation…
>
> It is credible that Mr. Monroy had difficulty getting out of bed and dressing during periods when he had spasm.

33. Luna's report also stated:

> It is credible that Mr Monroy could have difficulty driving due to the sedating effects of his pain medications but it is unclear if or how often Mr Monroy has been unable to drive. His family medicine provider in Jan 2017 noted that he was unable to drive a car when taking his pain medicines. Mr Monroy mentioned this also in a letter to Lincoln Financial in Apr 2017.

But Luna concluded that difficulty driving on a *regular* basis does not appear to be supported by the available documents. [Emphasis added]. "Regular" was not defined.

34. Luna also concluded that Monroy required restrictions in his work to not encourage worsening his condition.

> Lifting/carrying, pushing/pulling, twisting and stooping can trigger back spasm and worsen pain for individuals with axial back pain. Some level of restriction on these activities would be appropriate for Mr Monroy. Within the limitations of the documentation available to me, I would recommend restriction from twisting and stooping (never). I would recommend restriction from pushing, pulling, lifting or carrying over 40 pounds (never). This would be reduced to 10 pounds during times of pain exacerbation. His work station should provide him with the ability to work from either a standing or seated position and to easily transition from one to another. He should be given the opportunity to walk for at least 3 minutes in every 30.

35. Medical reviewer Luna was again chosen to review further documentation provided by Monroy for an addendum to assist Lincoln in denying the appeal of Monroy.

36. Luna's conclusion from his March 2, 2018 report addendum is: "My prior opinion does not change based on the new information. Mr. Monroy has significant pain but he does not appear to have any physical functional limitation. Work restrictions are recommended for his spondylosis/axial back pain, as previously described."

37. Luna's philosophy did not consider pain disabling, or the physical inability to be mobile on a reliable basis to interfere with Monroy's ability to perform the physical requirements of his occupation with reasonable continuity.

**DEFENDANTS HAVE USED AN ARBITRARY AND INAPPROPRIATE STANDARD OF REVIEW IN TERMINATING MONROY'S STD BENEFITS**

38. By letter dated March 19, 2018, Defendants denied the final appeal of Monroy to have his STD benefit reinstated. The reason given for the denial was:

> We understand that you have been diagnosed with lumbosacral spondylosis with radiculopathy, chronic pain, continuous use of opioids, and depression. However, our review of the medical documentation, which included reviews by a licensed health care consultant for your depression and an independent physician who is Board Certified in Occupational Medicine for lumbosacral spondylosis with radiculopathy, chronic pain, and continuous use

> of opioids, did not support restrictions and limitations that would render you unable to perform the main duties of your own occupation beyond March 1, 2017.

39. The letter gave no weight to the findings of Monroy's treating PCP.

40. Nowhere in the Policy definitions of the relevant Plan is there a requirement that the medical ailment causing disabling symptoms needs to have symptoms measurable as if a laboratory numerical analysis or a radiology image finding were necessary.

41. The difficulty of measurement of diseases including pain has been the subject of discussion by the United States Court of Appeals where the consensus is that it is not legitimate to require an unprovable quality of evidence to prove a measurement of pain or discomfort from the disease. E.g., *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676-678 (9th Cir. 2011).

42. Monroy has support for his claim from multiple treating physicians who had performed many diagnostic techniques and highly invasive procedures such as laminectomy and fusion in attempting to make life more manageable for Monroy.

43. Lincoln did not have Monroy personally examined in an Independent Medical Examination (IME) or even a Functional Capacity Examination (FCE) before terminating his benefits and denying his appeal.

44. Lincoln has improperly discredited the history of medical ailments described by Monroy in multiple medical histories and the opinions and medical examination assessment of Monroy's treating physicians.

45. Lincoln denied Monroy's appeal by letter dated March 19, 2018. The denial quoted contract language for TOTAL DISABILITY and SUBSTANTIAL AND MATERIAL ACTS.

> **TOTAL DISABILITY** or **TOTALLY DISABLED** means that as a result of an Injury or Sickness the Insured Person is *unable to perform with reasonable continuity* the Substantial and Material Acts necessary to pursue his or her Own Occupation and is not working in his or her Own Occupation. The loss of a

> professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability, but may be a factor that will be considered in determining whether the Insured Person is Totally Disabled.
> **SUBSTANTIAL AND MATERIAL ACTS** means the important tasks, functions and operations that:
> (1) are generally required by employers from those engaged in the Insured Person's Own Occupation; and
> (2) cannot be reasonably omitted or modified.
> [Emphasis of italics added]

46. Lincoln's denial of appeal classified Monroe's occupation as a light physical capacity occupation.

47. Lincoln's denial of Monroy's appeal accepted and used standards of review which are inappropriate as its basis for rejecting Monroy's claim. For instance the denial states:

> The restrictions or limitations placed upon the claimant's physical activities by the attending physician(s), Dr. Wohl, are not reasonable and consistent with the medical findings. In Jan 2017, Dr. Wohl opined that Mr. Monroy was incapable of minimum/sedentary activity and had a complete limitation of functional capacity. In the available documents, Mr. Monroy does not appear to have physical functional limitations other than the infrequent episodes when he has back spasm associated with his pain. He does not have loss of strength or sensation. He has reduced spinal range of motion only during his periods of back spasm.

48. The adoption of Luna's conclusion includes factual misinformation, and an abandonment of the relevant standard of own occupation disability.

49. Among the ways in which Lincoln abused its discretion in terminating Monroe's claim and denying his appeal, is by ignoring, the essential Job Functions performed in Monroy's own occupation which include:

> 10. Works in an out-of-doors environment during daytime and night time hours and in a variety of weather conditions and

> temperatures, environment is generally dusty and filled with vehicle exhaust.
>
> …
>
> 12. Extensive (up to 8 consecutive hours) standing and walking (up to _5_ miles daily) on cement, unusual parking lot surfaces, tile, lino and other interior and exterior flooring surfaces.
> 13. **Repeated, regular and extended sliding, twisting, bending, pulling, pushing, stooping, stretching and reaching.**
> 14. Repeated and regular getting in and out of different sized vehicles.
> 15. Repeated lifting of vehicle hoods and trunks (up to 40 pounds leveraged).
>
> …
>
> 17. **All physical requirements detailed on attached chart.**
>
> [Emphasis added. See attached chart, Exhibit 1.]

50. The chart to which the previous paragraph refers includes classifications of what is required on a never, occasional, frequent, or constant basis.

51. The chart describes a job requirement that the employee be able on a frequent basis to twist at the neck and on an occasional basis to twist at the waist. Frequent is defined as for 3-6 hours on a daily basis. Occasional is defined as up to 3 hours on a daily basis.

52. While rejecting the assessment of Monroy's treating physician Lincoln chose not to compare the restrictions noted as reasonable in the body of the Luna review and the description from the employer on the requirements of the occupation. Luna's January 18 report specifically states that Monroy should be restricted and should never twist or stoop on the job.

> For the period 9/16/16 onward, I would recommend restriction from twisting and stooping (never). I would recommend restriction from pushing, pulling, lifting or carrying over 40 pounds (never). This would be reduced to 10 pounds during times of pain exacerbation. His work station should provide him with the ability to work from either a standing or seated position and to easily transition from one to another. He should be given the opportunity to walk for at least 3 minutes in every 30. Note that I did not see any recommendations for work restrictions from any of his providers prior to Jan 2017

> when he removed himself from work, but Mr. Monroy had spondylosis/axial back pain throughout this period. Lifting/carrying, pushing/pulling, twisting and stooping can trigger back spasm and worsen pain for individuals with axial back pain. Some level of restriction on these activities is appropriate. (Emphasis added).
> *See* AR Bates #110.

53. The chart establishing the job requirements of the relevant occupation also required lifting and carrying as much as 75 pounds occasionally, up to 3 hours per day, and 11-25 pounds frequently, as much as 3-6 hours per day. Luna's recommendations limit Monroy from pushing, pulling, lifting or carrying over 40 Pounds, stating that it is not medically reasonable to allow that at all. The medical reviewer states Monroy should never be required to do any of these activities where the weight exceeds 40 pounds. *See* Exhibit 1.

54. Defendant's own doctor describes the necessity of physical limitation for Monroy which is inconsistent with being able to perform the physical needs of his regular occupation.

**COUNT 1**

**DECLARATORY JUDGMENT**

55. Monroy incorporates all paragraphs above as if fully set forth herein.

56. Lincoln has a financial conflict of interest which has influenced STD decision making adverse to the interests of fairness and of Monroy

57. Lincoln has breached its fiduciary duties by not performing in the interests of the participants and beneficiaries for the purpose of providing benefits to participants and their beneficiaries as required by ERISA, 29 U.S.C. § 1104(A)(1).

58. Lincoln improperly terminated the Monroy claim for STD benefits and his administrative appeals.

59. Monroy seeks a declaration by this Court that:

1. Short Term Disability benefits be paid by Lincoln for the entire period of Monroy's eligibility;

2. Monroy be able to submit his claim for Long Term Disability (LTD) to Lincoln without punishment or negative assessments made against him of the termination of the STD claim;

3. Monroy be awarded attorneys' fees, costs, pre-judgment interest in reasonable amounts plus all other relief the Court deems just.

RESPECTFULLY SUBMITTED this 12th day of July, 2018.

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.

By *\/s/ Barry Kirschner*
Barry Kirschner
Attorney for Plaintiff